Marlene ARCHIE, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 20, 2006.

Decided March 27, 2006.

Reargument Denied May 18, 2006.

Marlene Archie, petitioner, pro se.

Janet M. Tarczy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Marlene Archie (Claimant) petitions for review of an adjudication of the Unemploy-

ment Compensation Board of Review (Board) denying her claim for unemployment compensation benefits. The Board, affirming the decision of the Referee, found that Claimant's employer, Arcadia University, gave her reasonable assurance of a teaching assignment for the fall semester, rendering her ineligible for unemployment compensation.

The background to this case is as follows. Claimant began working for Arcadia University (Employer) in August 2002 as a part-time adjunct professor, teaching two courses for the English Department during the fall and spring semesters. Claimant worked for Employer during the spring semester of 2005, which began on January 28, 2005, and ended on May 10, 2005. On May 9, 2005, Employer's English Department Chair notified Claimant by mail that she was looking forward to Claimant's return to the school in the upcoming fall semester to teach the two courses, "assuming the enrollments are sufficient to run the class sections." Certified Record (C.R.), Item No. 9, SL–12.[1]

Claimant applied for unemployment compensation benefits on May 1, 2005, for the weeks ending May 7, 2005, and May 14, 2005. The Philadelphia UC Service Center determined that Claimant was ineligible for benefits under Section 402.1(1) of the Unemployment Compensation Law (Law).[2] Claimant appealed, and a hearing was held before a Referee on July 19, 2005.

At the hearing, Employer offered the testimony of Lorraine Yearicks, its senior human resources representative. Yearicks testified that prior to each semester, Claimant received a contract for the upcoming semester that indicated the courses Claimant would be teaching, the number of credits, the salary and method of payment. Claimant's fall semester contracts were dated August 20, 2002,[3] August 18, 2003, and August 2, 2004, respectively. However, Yearicks stated that, as of the date of the July 19, 2005, hearing, Employer had not sent Claimant a contract for the fall semester of 2005, because, as had been

1. The full text of the letter is as follows:

   Thank you for your contributions to the English Department this past spring semester. It is a pleasure having you as part of our teaching staff. I look forward to you joining us again in the fall to teach Composition and English courses, assuming the enrollments are sufficient to run the class sections.

   C.R. Item No. 9, SL–12.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, section 402.1(1), added by Act of July 6, P.L. 41, 43 P.S. § 802.1(1), provides in pertinent part, Benefits based on service for educational institutions pursuant to Article X, XI or XII [(relating to employees of the state, nonprofit organizations, or political subdivisions, respectively)] shall as hereinafter provided be payable in the same amount, on the same terms and subject to the same conditions as outlined in section 404(g) [(relating to rate and amount of compensation)]; except that:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

3. This agreement was replaced with an agreement dated November 1, 2002, purportedly to note an adjustment to Claimant's salary. C.R. Item No. 9.

stated in the May 9, 2005, letter, Employer did not yet know whether student enrollment would be sufficient.

Claimant also testified. She stated that she learned in April 2005 that there might be some changes to the Claimant's course load and schedule. Initially, Claimant was unclear as to whether the changes would affect the number of courses she would teach in the future or simply the time slots for her regularly scheduled courses. However, Claimant stated later in her testimony that the Department Chair informed her that "it was possible that I'd have one course at least.... That decision wouldn't be made until later." Notes of Testimony, July 19, 2005, at 7. Claimant offered into evidence an email sent to her from the Chair dated May 23, 2005, which stated, as follows:

> For Fall 2005: Most likely, we can offer you an EN 101 section and an EN 229 section. As you know, the hiring of adjunct faculty is always contingent on sufficient enrollment in not only the courses to be taught by adjunct faculty but also courses of full-time faculty.

C.R. Item No. 9, SL–13. Claimant concluded by stating that the Chair was unable to provide her with a concrete schedule for the fall semester of 2005.

■ The Referee affirmed the determination of the UC Service Center, finding that Employer provided Claimant with reasonable assurance that she would be teaching in the next academic term as she had in the most recent academic term. Because Employer had provided reasonable assurance of a teaching position,

Claimant was found ineligible for benefits. Claimant appealed, and the Board affirmed. Claimant now petitions this Court for review.[4]

On appeal, Claimant raises three issues for our consideration, which are consolidated for purposes of clarity. Claimant contends that Employer did not provide Claimant with reasonable assurance of reemployment for the fall semester of 2005 because (1) the economic terms and conditions of the job offered in the second term were substantially less than the terms and conditions for the job in the first term, and (2) Employer's offer was not a *bona fide* offer but mere speculation that Claimant would be reemployed.

■ Section 402.1(1) of the Law bars an instructional employee in an educational institution from receiving unemployment compensation benefits between successive academic years or terms,

> if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

43 P.S. § 802.1(1). We have consistently explained that "reasonable assurance" does not require the employer to give an absolute guarantee of employment in the second academic year. *Board of Education, School District of Philadelphia v. Unemployment Compensation Board of Review*, 147 Pa.Cmwlth. 654, 609 A.2d 596, 599 (1992).[5]

---

4. Our scope of review is limited to determining whether constitutional rights have been violated, errors of law were committed, or whether findings of fact were supported by substantial evidence. *Sheets v. Unemployment Compensation Board of Review*, 708 A.2d 884, 885 n. 3 (Pa.Cmwlth.1998).

5. The existence of "reasonable assurance" is marked by "some evidence of mutual commitment or assurance between the teacher and employer to recall the former, so that the teacher can be said to have a reasonable expectation of returning to employment in the next term." *Bornstein v. Unemployment Com-*

Although "reasonable assurance" is not defined in the Law, its meaning has been addressed in regulations. These regulations provide that "reasonable assurance" consists of a bona fide offer of employment for the next academic term on terms substantially the same as those in the prior term. 34 Pa.Code § 65.161(a). Specifically, Section 65.161 of Title 34 of the Pennsylvania Code states the conjunctive, two-part test as follows: .

(a) For purposes of section 402.1 of the law (43 P.S. § 802.1), a contract or reasonable assurance that an individual will perform services in the second academic period exists only *if both of the following conditions are met:*

(1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual.

(2) The economic terms and conditions of the employment offered to the individual for the second academic period are not substantially less than the terms and conditions of the individual's employment in the first academic period.

34 Pa.Code § 65.161(a) (emphasis added). The regulation also explains that the economic terms and conditions of employment are wages, benefits and hours of work. 34 Pa.Code 65.161(c).[6]

Here, the Board found that the terms and conditions offered in May 2005 by Employer were not substantially less than those previously offered. Claimant has been employed with Employer since August 2002. During the last four years of employment, Claimant had taught part-time in the English Department and had not missed any of the six regularly scheduled academic terms. By letter dated May 9, 2005, Employer offered continued part-time employment to Claimant for the fall semester of 2005, subject to adequate student enrollment. This letter did not mention changing the economic terms of that employment. It can only be inferred, therefore, that they were unchanged.

Claimant, however, argues that the wages and hours that she *actually received* for the fall semester of 2005 were substantially less than that which she had received in the spring semester of 2005.[7] Indeed, Claimant testified that there was going to be a change in the conditions of employment for the fall semester of 2005.[8] However, the changes about which Claimant

---

*pensation Board of Review,* 69 Pa.Cmwlth. 521, 451 A.2d 1053, 1054–1055 (1982) (quoting *Aronson v. Unemployment Compensation Board of Review,* 56 Pa.Cmwlth. 177, 424 A.2d 972, 973 (1981)). What constitutes reasonable assurance is a matter to be determined by the Board based on the facts of the case. *Bornstein,* 451 A.2d at 1055.

6. 34 Pa.Code 65.161(c) states:

(c) For the purposes of subsection (a), economic terms and conditions of employment include wages, benefits and hours of work.

7. In her brief, Claimant asserts that in August 2005, she received a contract from Employer requesting Claimant teach one course in the fall rather than two as she had previously

taught with Employer in past terms. Claimant Brief at 10. Thus, she returned to work on August 29, 2005, with reduced work hours and wages. This information is *de hors* the record and, thus, irrelevant to the question of whether Claimant was entitled to benefits on May 7, 2005.

8. Notably, the Board rejected Claimant's testimony that there was going to be a change in the conditions of employment. Questions of credibility, resolutions of conflicts in the evidence presented, and the weight to be given evidence are matters for the Board, as the ultimate factfinder, to resolve. *Wysocki v. Unemployment Compensation Board of Review,* 87 Pa.Cmwlth. 260, 487 A.2d 71, 73 (1985).

testified related to a change in course assignment or time, not changes in hours or wages.[9] For purposes of Section 402.1(1) of the Law, the economic terms and conditions of employment include only wages, benefits and hours of work. 34 Pa.Code § 65.161(c).

Nevertheless, the focus of our inquiry is whether the terms and conditions offered were substantially less *at the time the offer was made*, "without the benefit of hindsight." *Glassmire v. Unemployment Compensation Board of Review*, 856 A.2d 269, 274 (Pa.Cmwlth.2004). The reasonableness of an employer's assurance may not be evaluated with the benefit of hindsight. *Lyman v. Unemployment Compensation Board of Review*, 76 Pa.Cmwlth. 348, 463 A.2d 1270, 1272 (1983). Here, Employer has demonstrated that the offer made to Claimant did not state a reduction in Claimant's hours or wages.[10] As such, we conclude that, when the offer was made on May 9, 2005, the terms and conditions of employment offered were unchanged.

■ Next, Claimant contends that Employer's offer was not "bona fide" because Claimant's employment was dependent upon student enrollment at the school. Because enrollment was not within Employer's control, Claimant argues that the offer cannot be considered bona fide. We disagree.

Under the regulations, an offer is not a bona fide one if *both* of the following conditions exist:

(1) The educational institution or educational service agency does not control the circumstances under which the individual would be employed.

(2) The educational institution or educational service agency cannot provide evidence that the individual or similarly situated individuals normally perform services in the second academic period.

34 Pa.Code § 65.161(b). Stated otherwise, an employer's offer is "bona fide," if employer can refute either of the two above-listed conditions.

Here, we agree that student enrollment is a circumstance beyond the control of Employer. However, Employer's evidence refuted the second condition. Claimant was hired in August 2002 on a term-by-term basis to teach two courses per semester. In each semester since her hire date, Claimant has returned to Employer to teach two courses. Thus, the record demonstrates a historical pattern wherein Claimant has returned to work for Employer in the successive terms under similar circumstances. Therefore, the Board did not err in concluding that Claimant received a bona fide offer of employment for the fall semester of 2005.

9. In her brief, Claimant asserts that Employer verbally indicated in April and May of 2005 that there may be limited work, constituting fewer courses than in previous terms, available for the fall semester of 2005. Claimant Brief at 9. However, the evidence in the record does not support these assertions. At best, the Chair's May 23rd email to Claimant offering two courses for the fall semester of 2005 as "most likely," supports Claimant's contention; however, we reject Claimant's argument because we do not construe that email to mean that Claimant would not be teaching two courses in the fall semester of 2005. In fact, this email supports the offer made on May 9, 2005.

10. The record indicates that, historically, personal service agreements were not issued to Claimant until the month in which the term was to commence, August. Following the reasoning in *Glassmire*, we refuse to engage in hindsight and apply the terms and conditions set forth in the August 2005 personal service agreement in order to find that the May 9, 2005, offer at issue was substantially less than that which was previously offered.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 27th day of March, 2006, order of the Unemployment Compensation Board of Review, dated September 20, 2005, in the above-captioned matter, is hereby affirmed.